**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| **PAULETTE B.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-20-3691** |
| | ) | |
| **KILOLO KIJAKAZI[1],** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Paulette B. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 13, and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 14. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. §

405(g) for further proceedings consistent with this opinion.  A separate order will issue.

## I.       Procedural Background

On July 12, 2019, Plaintiff filed for DIB under Title II of the SSA, alleging disability

beginning March 12, 2018.  R. 20.  Plaintiff alleged disability due to arthritis, bulging disc,

degenerative disc disease, and sciatica nerve pain.  R. 68, 80.  Plaintiff's claim was initially

denied on October 4, 2019, and upon reconsideration on January 17, 2020.  R. 20.  An

administrative hearing was held on September 2, 2020.  R. 20.  On October 1, 2020, the ALJ

denied Plaintiff's claim for DIB.  R. 32.  Plaintiff sought review by the Appeals Council, which

concluded on November 24, 2020, that there was no basis for granting the request for review.  R.

4.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

## II.      Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the

ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).

The Court must affirm the ALJ's decision if it is supported by substantial evidence and the

ALJ applied the correct law.  *Id.*  ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.

Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly

and supported the decision reached with substantial evidence, this Court cannot overturn the

decision, even if it would have reached a contrary result on the same evidence."  *Schoofield

v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a

mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (2012).  The Code of Federal Regulations outlines a five-step process (Five–Step Analysis) that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. § 404.1520(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence

(e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

## III.    Analysis

The ALJ evaluated Plaintiff's claim using the Five–Step Analysis. R. 22–32. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 12, 2018. R. 22. At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined that Plaintiff had the following severe impairments: arthritis with degenerative disc disease, obesity, and depression. R. 22. The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff's] ability to perform basic work activities." R. 22. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)." R. 23. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] is limited to 4-hours of standing and walking in an 8-hour workday; [Plaintiff] can occasionally climb ramps and stairs; but never climb ladders, ropes, or scaffolds; where [Plaintiff] can frequently balance, occasionally stoop, crouch, kneel, and crawl; [Plaintiff] is limited to simple, routine tasks and simple work-related decisions and few changes to work process and setting.

R. 25.  At step four, the ALJ determined Plaintiff is unable to perform her past relevant work.  R. 30.  At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: ticket seller, routing clerk, and marker.  R. 31.  The ALJ found that "Plaintiff has not been under a disability, as defined in the SSA, from March 12, 2018."  R. 32.

On appeal, Plaintiff argues that the ALJ erroneously evaluated Plaintiff's subjective complaints, the ALJ erroneously assessed Plaintiff's RFC, and the ALJ failed to follow the proper procedure for analyzing mental impairments.  Pl.'s Mem. in Supp. of Pl.'s Mot. 3–17, ECF No. 13–1.  Defendant argues that "the ALJ reasonably assessed Plaintiff's subjective complaints by evaluating them against the record as a whole."  Def.'s Mem. in Supp. of Def.'s Mot. 6, ECF No. 14–1.  Defendant avers that the RFC is supported by substantial evidence.  *Id.* at 10.  Defendant also argues that the ALJ followed the proper procedure for analyzing mental impairments.  *Id.* at 17.  For the reasons set forth below, the Court **REVERSES** the ALJ's decision and **REMANDS** the matter for further proceedings.

### A.  Defendant Properly Evaluated Plaintiff's Subjective Complaints

In evaluating a claimant's subjective complaints pursuant to 20 C.F.R. § 404.1529, the ALJ is required to follow a two-step process.  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted).  First, the ALJ must find that objective medical evidence is present to show that a claimant has a medical impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529 (b).  At

the second step, the ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which it affects her ability to work. *Id.* To assess the intensity, persistence, and limiting effects of the symptoms, the ALJ considers all the evidence presented, including *inter alia*, a claimant's daily activities; precipitating and aggravating factors; treatment a claimant received; the type, dosage, effectiveness, and side effects of any medication; and any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* The ALJ will also evaluate a claimant's statements in relation to the objective medical evidence and other evidence, in deciding whether she is disabled. *Id.*

The second step requires the ALJ to assess the credibility of the claimant's statements about her symptoms and their effect on her ability to perform work activities. *E.g.*, *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. § 404.1529 (c)(4)). A claimant's subjective statements about pain intensity or persistence "cannot be discounted solely based on objective medical findings." *Id.* However, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her symptoms can reasonably be accepted. 20 C.F.R. § 404.1529 (c)(4). The Fourth Circuit makes clear that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

Plaintiff avers that the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints. Pl.'s Mem. in Supp. of Pl.'s Mot. 3. Specifically, Plaintiff claims that "[the ALJ] erroneously required Plaintiff to prove the type and degree of her subjective complaints by objective medical evidence and determined that [s]he had not done so." *Id.* at 6.

Plaintiff argues that "the ALJ specifically rejected Plaintiff's testimony regarding her subjective complaints on the basis that her complaints were not supported by the objective medical evidence." *Id.* at 7.  This Court disagrees.

In this case, the ALJ concluded that:

> After careful consideration of the evidence the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record to an extent that would preclude sustaining the range of unskilled, light exertion adopted herein.

R. 25–26.  The ALJ considered Plaintiff's complaints, Plaintiff's testimony, treatment records, conservative treatment recommendations, Plaintiff's lack of treatment, the nature of Plaintiff's emergency room hospital visits, Plaintiff's work history, the severity of Plaintiff's symptoms, Plaintiff's medication management, Plaintiff's mental health treatment, Plaintiff's chronic pain treatment, the medical opinion evidence and examination findings, and Plaintiff's disability retirement findings from the police force.  R. 25–30.

The ALJ found that although Plaintiff's obesity was noted in Dr. Halsey's health assessment in 2019, the focus of her treatment was weight loss and exercising.  R. 26.  When discussing Plaintiff's back pain, the ALJ found that Dr. Halsey noted that Plaintiff reported one week of "achy" back pain, which she described as intermittent low back pain, that usually resolved after two to three days of taking ibuprofen and heat therapy.  R. 26.  The ALJ noted that even though Plaintiff reported still having back pain, and reported taking a break from driving, Dr. Halsey found "[Plaintiff] to be alert with 5/5 strength and no sensory deficits"; "[Plaintiff] was also neurovascularly intact with normal gait"; and "Dr. Halsey's treatment recommendations were conservative, including encouraging exercise, stretching, and naproxen as needed (internal citations omitted)."  R. 26.  The ALJ explained that:

> [T]he nature and scope of the above treatment, the conservative treatment recommendations, the objective findings, and the statements made during the course of this treatment are not supportive of the extent of limitation subjectively alleged and not supportive of more restrictive residual functiuonal [sic] capacity findings than adopted herein.

R. 26.  The ALJ also explained that although Plaintiff complained of back pain, she did not return for treatment for back pain for several months, until she went to the emergency room for what she reported as "one-day of back pain radiating into her lower extremities."  R. 27.  The ALJ noted that upon review of her MRI, Plaintiff exhibited mild disc herniation without spinal stenosis, and found Plaintiff only had reduced range of motion in her lumbar spine.  R. 27.  Besides that, her treatment team found that she was alert, nontoxic, she had 5/5 strength in her lower extremities, she was able to ambulate with normal heel and toe walking, and she had negative straight leg raise testing.  R. 27.  The ALJ considered Plaintiff's other emergency room visits and noted that some related to other illnesses.  However, the ALJ acknowledged that Plaintiff had two urgent care video calls specific to low back pain complaints, but her treatment recommendations were conservative, including medication management, warm compresses, and slow stretching.  R. 27.  The ALJ stated that the evidence presented supported limitations on postural maneuvers which she included in the RFC.  R. 27.

When evaluating Plaintiff's foot pain, which was assessed as right plantar fasciitis, the ALJ explained that she did not consider it severe because it was not reasonably expected to last 12 months.  R. 28.  Nevertheless, the ALJ considered Plaintiff's foot pain in the context of her obesity.  R. 28.  The ALJ noted that Plaintiff expressed "she had been walking on her treadmill more trying to lose weight."  R. 28.  The ALJ also considered Plaintiff's treatment recommendations which included "nutrition and exercise counseling, as well as stretching, icing, and reducing treadmill time (internal citations omitted)."  R. 28.  The ALJ concluded that:

> The exacerbation of foot pain when exercising, given [Plaintiff's] obesity, as well as the recommendation to reduce treadmill times, are factors the undersigned has considered in limiting [Plaintiff's] standing and walking to no more than four-hours in an eight-hour day.  However, the undersigned is not persuaded that such evidence supports more restrictive findings when considered in combination with the overall conservative treatment recommendations, the evidence of exercise being part of [Plaintiff's] treatment regimen (and an activity [Plaintiff] was performing), and the physical examinations of record that document normal gait with intact strength findings in her lower extremities.

R. 28.  The ALJ also articulated that "[t]o the extent that [Plaintiff] subjectively alleges more restrictive functioning than adopted herein, those allegations cannot be found reasonably supported by or consistent with the nature, scope, findings, or statements made in [Plaintiff's] medical records."  R. 28.

As for Plaintiff's mental complaints, the ALJ concluded that the limitation to "simple, routine tasks and simple work-related decisions and few changes to work process and setting," is reasonable giving Plaintiff's complaints of chronic pain and depression, and alleged limitations in focus and concentration.  R. 28.  The ALJ supported her findings by stating *inter alia* that "[Plaintiff] continues to live relatively independently, living with her children who help with chores"; "Plaintiff testified that she 'merely takes medication for depression' . . . [and] her chronic pain treatment has also been relatively routine, consisting of medication, lifestyle modifications, recommendations for diet and exercise, and acupuncture"; "[Plaintiff's] presentation during medical visits is also rather unremarkable"; "[Plaintiff] is [generally] described as alert and oriented or without distress or as non-toxic or pleasant"; and Dr. Gilbert opined that while depression effects Plaintiff's pain sensitivity and coping skills, Plaintiff was described as "presenting relatively unremarkably," except for a  mildly depressed mood, and her treatment recommendations were conservative.  R. 28.

The ALJ also discussed the medical opinion evidence.  The ALJ found the State agency psychological consultants' findings of non-severe mental impairments not persuasive, "because

they did not adequately consider the combined effects of [Plaintiff's] mental and physical

impairments (internal citations omitted)."  Rather, the ALJ found Dr. Gilbert's assessment

persuasive in establishing the limitation; "'simple, routine tasks, work-related decisions, and few

changes,' when considering the combined effects of [Plaintiff's] depression and chronic pain

management . . . as well as '[Plaintiff] being given medications such as prednisone, tramadol,

and flexeril during her exacerbations of back pain.'"  R. 29.  The ALJ also pointed out that while

the State agency consultants found that Plaintiff could sustain light work with six-hours of

standing and walking and occasional postural maneuvers, the ALJ restricted Plaintiff further to

no more than four hours of standing and walking, which the ALJ asserted was "based on

consideration of the evidence of record," including having issues with prolonged activities, such

as driving.  R. 29.

      After considering the evidence, the ALJ found that "the medical record does not

reasonably support the extent of limitation[s] subjectively alleged."  R. 30.  The ALJ

summarized her findings and explained:

> [Plaintiff] has had relatively routine and conservative treatment measure
> recommendations for chronic pain and depression with relatively minimal objective
> findings associated with it.  [Plaintiff] has only treated infrequently for exacerbations of
> pain, and in medical records those exacerbations are described as relatively acute and of
> short duration or resulting from activities seemingly beyond the scope of the limitations
> of light exertion, such as when she reported chest pain after heavy lifting or foot pain
> after walking on her treadmill "more" than usual.

R. 30.  The record shows that the ALJ considered many factors when determining Plaintiff's

RFC, and thus did not require Plaintiff to prove her subjective complaints by objective medical

evidence.  In fact, along with Plaintiff's complaints, the ALJ considered Plaintiff's treatment

records, her conservative treatment regimen, and the medical opinion evidence when

determining the RFC.  Also, the ALJ afforded more limitations than Plaintiff's medical provider.

Thus, since the ALJ considered Plaintiff's subjective complaints, alongside the available evidence in the record, and provided sufficient explanation for her findings, the Court finds that the ALJ did not improperly evaluate Plaintiff's subjective complaints.

### B.   The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff argues that the ALJ failed to properly assess Plaintiff's limitations pursuant to SSR 96-8p.  Pl.'s Mem. in Supp. of Pl.'s Mot. 7.  Plaintiff asserts that the ALJ failed to provide a function-by-function assessment of Plaintiff's ability to perform the physical and mental demands of work.  *Id.* at 9.  Plaintiff contends that the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC, and instead limited Plaintiff to "simple, routine tasks and simple work-related decisions and few changes to work process and setting," in violation of *Mascio v. Colvin*.  *Id.* at 10.   Specifically, Plaintiff avers that the ALJ failed to explain how the limitation "simple, routine tasks and simple work-related decisions and few changes to work process and setting," accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace.  *Id.* 10-11.  Plaintiff also asserts that the ALJ failed to explain how an individual with moderate difficulties in concentration, persistence, or pace, could sustain work for 90% of the day.  *Id.* at 11.

Under *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, and pace beyond limiting a claimant to performing only "simple, routine tasks."  *Mascio,* 780 F.3d at 638.  This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at

*3 (D. Md. May 19, 2015).  The Fourth Circuit reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."  *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that "[a]n ALJ can explain why [a plaintiff]'s moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC.").

In making the RFC assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms.  *See* 20 C.F.R. § 404.1545(a).  The ALJ likewise must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.).

At step three of the analysis, the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace.  R. 24.  The ALJ explained that "Dr. Gilbert's assessment is found reasonably supportive of such a limitation, as are [Plaintiff's] statements of difficulty with concentration or focus because of pain."  R. 24.  Specifically, the ALJ stated, "Dr. Gilbert's evaluation's provides sufficient support to establish that, when consider[ing] [Plaintiff's] depression in combination with her treatment for chronic pain, it is reasonable to include a moderate limitation in concentrating, persisting or maintaining pace."  R. 24.

The ALJ found that Plaintiff had the RFC to perform light work.  R. 25.  Considering Plaintiff's mental impairments, the ALJ concluded that "[Plaintiff] is limited to simple, routine

tasks and simple work-related decisions and few changes to work process and setting." R. 25.  In

support of Plaintiff's mental imitations, the ALJ explained that:

> With regard to including the limitation to simple, routine tasks and simple work-related decisions and few changes to work process and setting, this provision is reasonable given [Plaintiff's] complaints of chronic pain and depression and alleged limitations in focus and concentration because of it.

R. 28.  The ALJ sufficiently provided analysis for her reasoning of Plaintiff's mental limitations

in the narrative discussion by stating:

> First, despite these issues, [Plaintiff] continues to live relatively independently, living with her children who help with chores.  Second, [Plaintiff] has not required significant, longitudinal mental health treatment, nor has she required emergency intervention or hospitalization because of mental health symptoms.  Rather, [Plaintiff] testified that she merely takes medication for depression, and as discussed above, her chronic pain treatment has also been relatively routine, consisting of medication, lifestyle modifications, recommendations for diet and exercise, and acupuncture.  Third, [Plaintiff's] presentation during medical visits is also rather unremarkable.  In general, [Plaintiff] is described as alert and oriented or without distress or as non-toxic or pleasant.  Lastly, Dr. Gilbert's examination findings are also supportive of the findings made herein.  Dr. Gilbert examined [Plaintiff] in August 2019, and while she noted that depression effects [Plaintiff's] pain sensitivity and coping skills, she also described [Plaintiff] as presenting relatively unremarkably, but for 'mildly' depressed mood, and she also made conservative treatment recommendations.

R. 28.  When discussing the medical opinion evidence, the ALJ rejected the State agency

psychological consultants' findings because they did not adequately consider the combined

effects of Plaintiff's mental and physical impairments.  R. 29.  The ALJ instead found Dr.

Gilbert's opinion persuasive, when considering the combined effects of Plaintiff's depression

and chronic pain management, to "include a limitation to simple, routine tasks, simple work-

related decisions, and few changes."  The ALJ also explained that the limitation to "'simple,

routine tasks, simple work-related decisions, and few changes,' also reasonably accommodates

the evidence showing [Plaintiff] being given medications such as prednisone, tramadol, and

flexeril, during her exacerbations of pain."  R. 29.

The ALJ also explained how the limitation, "simple, routine tasks, simple work-related decisions, and few changes," addresses Plaintiff's moderate difficulties in "concentration, persistence, or pace." R. 24–25.  Plaintiff's last argument is also without merit – that the ALJ failed to explain how Plaintiff could be on task for 90% of the day.  Pl.'s Mem. in Supp. of Pl.'s Mot. 11.  The ALJ's requirement under *Mascio*, is to account for Plaintiff's moderate limitations in concentration, persistence, or pace, in the RFC, which he did here by the above-referenced limitation.

The record reflects that the ALJ conducted a function-by-function assessment of Plaintiff's mental limitations and explained why Plaintiff was limited to "simple, routine tasks, simple work-related decisions, and few changes to work process and setting." R. 25–30.  Since the ALJ connected her step 3 findings to the RFC assessment and provided sufficient explanation regarding Plaintiff's limitations throughout the RFC narrative, the Court finds there is no reversible error.

### C.  The ALJ Failed to Follow the Proper Procedure for Analyzing Mental Impairments

Plaintiff contends that while the ALJ did rate the degree of functional limitation pursuant to 20 C.F.R. § 404.1520a, she failed to provide adequate explanation to support each of those conclusions.  Pl.'s Mem. in Supp. of Pl.'s Mot. 16.  Defendant argues that the ALJ followed the special technique for evaluating mental impairments, as required by the regulations.  Def.'s Mem. in Supp. of Def.'s Mot. 18.  Defendant contends that the ALJ examined Plaintiff's mental impairments in more detail when crafting Plaintiff's RFC.  *Id.* at 19.  Defendant asserts that "Plaintiff identifies no specific report, opinion, or statement that purports to impose limitations in work-related function that might warrant different findings with respect to the severity of her

mental impairments." *Id.* Defendant also argues that instead, Plaintiff asks this Court to reweigh the evidence. *Id.*

When evaluating the severity of mental impairments for adults, an ALJ must follow a special technique at each level in the administrative process. 20 C.F.R. § 404.1520a(a) (2017). An ALJ must first evaluate a claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1) (2017). The ALJ is then tasked with rating the degree of functional limitation that results from the impairments. 20 C.F.R. § 404.1520a(b)(2) (2017). Once the ALJ rates the degree of functional limitation that results from the impairment, the ALJ must determine the severity of the mental impairment. 20 C.F.R. § 404.1520a(d) (2017). After the technique is applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4) (2017). "The special-technique regulation's plain language describes what the [Social Security Administration] must do." *See Patterson v. Comm's of Soc. Sec. Admin.*, 846 F.3d 656, 661 (4th Cir. 2017). "The weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders judicial review." *Id.* at 662 (holding that the ALJ's failure to apply the special-technique regulation was not a harmless error because the ALJ "did not explain how he weighed all relevant evidence, he did not rate the claimant's four

areas of functional limitations listed in [20 C.F.R.] § 1520a(c)(3) according to the prescribed scale, nor did he explain how he reached his conclusions about the severity of the mental impairment."); *See also Quinones v. Saul*, C/A No. 1:18-3561-BHH-SVH, 2019 WL 7461669, at *15 (D.S.C. Dec. 18, 2019) (holding that as a result of the ALJ's failure to show her work, the Court could not meaningfully review the ALJ's attempt to apply the special-technique analysis). "Without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence." *Patterson*, 846 F.3d at 662.

Listings 12.04 and 12.06, refer to mental impairments. Specifically, 12.04 concerns depressive disorders, and 12.06 concerns anxiety. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Both listings entail: (1) "paragraph A criteria," which consist of a set of medical findings; and (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), (G). Specifically, "Paragraph B" consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b), § 12.04(B).

The ALJ employs a "special technique" to rate a plaintiff's degree of limitation in each of the functional areas, based on the extent to which the plaintiff's impairment "interferes with the [plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a plaintiff's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). To satisfy "paragraph B" of the mental impairment listings, a plaintiff must exhibit either "marked" limitations in two of the first three functional areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See. e.g.*, 20

17

C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  Marked limitations "may arise when several

activities or functions are impaired, or even when only one is impaired, as long as the degree of

limitation is such as to interfere seriously with [the Plaintiff]'s ability to function."  *Id.* §

12.00(C).

> Here, the ALJ found that:
>
> [Plaintiff] has [a] mild limitation in understanding, remembering or applying information;
> mild limitation in interacting with others; moderate limitations in concentrating,
> persisting or maintaining pace; and mild limitations in adapting or managing oneself.  Dr.
> Gilbert's assessment is found reasonably supportive of such a limitation, as are
> [Plaintiff's] statements of difficulty with concentration or focus because of pain.
> However, when considering the evidence of record as a whole, the undersigned does not
> find sufficient support for more than mild to moderate limitations.  Even Dr. Gilbert
> noted that [Plaintiff's] reports of depression and anxiety were "not currently active or
> being treated," and, while [Plaintiff] presented with a depressed affect, it was only mildly
> so.  Beyond this, Dr. Gilbert noted that [Plaintiff] had no evidence of a formal thought
> disorder and she otherwise presented as pleasant.  [Plaintiff] has not required emergency
> intervention or hospitalization for depressive or anxiety-related symptoms, nor has she
> had significant, longitudinal, formal mental health treatment.  On the physical
> examinations [Plaintiff] has had, she is generally described as presenting without distress
> or as non-toxic, as well as alert and oriented.

R. 24.  The ALJ then explained that:

> In reaching this finding, it is noted that the State agency psychological consultants opined
> that [Plaintiff's] mental impairments were not severe, imposing only mild limitations in
> the paragraph B criteria (internal citations omitted).  However, they did not adequately
> consider the combined effects of [Plaintiff's] depression and pain, so they are not
> persuasive.  Dr. Gilbert's evaluation provides sufficient support to establish that, when
> consider[ing] [Plaintiff's] depression in combination with her treatment for chronic pain,
> it is reasonable to include a moderate limitation in concentrating, persisting or
> maintaining pace.

R. 24.  As Plaintiff stated in her brief, the ALJ properly rated each functional area by finding a

mild limitation in understanding, remembering or applying information; a mild limitation in

interacting with others; moderate limitations in concentrating, persisting or maintaining pace;

and mild limitations in adapting or managing oneself.  R. 24.  After rating each functional area,

the ALJ asserts several explanations, but it is difficult to ascertain specifically which functional area her conclusions pertain to.  The ALJ explained how she found moderate limitations in the functional area of concentration, persistence, or pace, but it is not clear which evidence she used to conclude each of the other functional areas.  The ALJ erred by grouping the analysis of the other functional areas into one paragraph and did not attribute specific analysis or conclusion to each particular functional area.

While the Court could attempt to figure out which reasoning belongs to which functional area, that would be beyond the role of the Court.  *See Hays*, 907 F.2d at 1456 (It is not the Court's role to "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence.").  Without speculation, the Court cannot "determine what medical evidence she relied on to make her determination for *each* of the functional areas."  *Wendy S. v. Saul*, No. 8:18-CV-03441-GLS, 2020 WL 1443028, at *3 (D. Md. Mar. 23, 2020) (citing *Chandler v. Colvin*, Case No. SAG-15-1408, 2016 WL 750549, at *2 (D. Md. February 24, 2016)); *see also Barnhart v. Colvin*, No. CV ADC-16-0629, 2017 WL 748974, at *6 (D. Md. Feb. 24, 2017) (While the ALJ's opinion addresses Plaintiff's limitations and mentions specific evidence pertaining to Plaintiff's limitations, "it includes no discussion of how that evidence was applied in evaluating Plaintiff's limitations in [each] [of] the four functional areas.").

Thus, since the Court cannot determine whether the ALJ's findings are supported by substantial evidence, remand is appropriate in this case.  On remand, the ALJ shall comply with the special-technique analysis in 20 C.F.R. § 404.1520a.  *See Patterson* 846 F.3d at 662 ("Failure to document application of the special-technique regulation constitutes error.").  Specifically, the ALJ should make clear which evidence and reasoning corresponds to *each* functional area.

**IV.    Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

March 24, 2022                                                     _____/s/_____
                                                                                   Charles B. Day
                                                                                   United States Magistrate Judge

CBD/pjkm